[Cite as *Martin v. Block Communications, Inc.*, 2017-Ohio-1474.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

James Martin                                    Court of Appeals No. L-16-1213

          Appellant                             Trial Court No. CI0201602367

v.

Block Communications, Inc., et al.              **DECISION AND JUDGMENT**

          Appellees                             Decided:  April 21, 2017

* * * * *

James Martin, pro se.

Mathew B. Beredo and Keith Wilkowski, for appellees.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, James Martin, appeals the September 13, 2016 judgment of the Lucas County Court of Common Pleas denying him leave to file an amended complaint and granting defendants-appellees', Block Communications, Inc. and Buckeye

Cablevision, Inc., Civ.R. 12(B)(6) motion to dismiss. For the following reasons, we affirm the trial court's judgment.

## I. Background

{¶ 2} Martin is a former employee of Block Communications and Buckeye Cablevision (collectively "Block"). On April 15, 2016, he filed a pro se complaint in the Lucas County Court of Common Pleas alleging that Block committed discriminatory employment practices in violation of R.C. 4112.02 and 4112.05 and 42 U.S.C. 1981 and 1983. To support his claims Martin alleged the following facts in his complaint.

{¶ 3} Martin began working part-time as a technical support specialist for Block in October 2014. During that time he also attended classes at Owens Community College and was an active political candidate and member of the Lucas County Republican Party. Martin claims to have told Block about his ongoing schooling and political activities during the hiring process. In February 2015, Block laid off about half of its technical support specialists and moved Martin into a full-time position to fill staffing gaps. Other employees were offered severance, early retirement, relocation, or layoff with the option to be rehired.

{¶ 4} Martin then began working a full-time schedule that required him to work six days a week, Monday through Friday from 5:00 p.m. to 11:00 p.m. and Saturday from noon to 11:30 p.m., with the potential for mandatory overtime on Sundays. Block held a schedule bid in April 2015. Employees were able to bid on their preferred shifts; schedules were then awarded based on performance and seniority. After the bid Martin

2.

was moved to a four-day work week with 10-hour shifts, Wednesday through Saturday from noon to 10:30 p.m. with the potential for mandatory overtime.

{¶ 5} On April 28, 2015, Martin received a semi-annual performance evaluation. Although the evaluation contained positive comments about Martin's job performance, his supervisor also noted that Martin was late to work six times in his first six months of employment. His supervisor warned him that "[he] does need to make sure to arrive to work on time each shift." One month later, Martin failed to appear for a scheduled shift and was disciplined under Block's progressive discipline policy. At that time, he received an "Oral Reminder," which is Step 1 of Block's Customer Operations Disciplinary Practice.

{¶ 6} Block held another schedule bid in July 2015. Martin's disciplinary record left him ineligible to choose from many of the available shifts. He claimed that the shifts from which he could choose were "equally unfavorable" to him. In August 2015 he was moved to a five-day work week with eight-hour shifts, Thursday through Saturday from 3:00 p.m. to 11:30 p.m.

{¶ 7} Martin was unhappy with his new schedule and requested that management either return him to a four-day work schedule or allow him to go back to working part-time so he could finish his college classes. His direct supervisor denied the request, but stated that he could resign and then return when he finished his studies. Martin was not interested in this option and appealed his supervisor's decision to the Customer Operations Manager. The manager denied Martin's appeal, stating that Block could not

3.

honor Martin's request because the department was understaffed. Martin's schedule remained the same.

{¶ 8} Martin's tardiness problems continued in August and September 2015, leading to further disciplinary actions. Block gave Martin a "Written Reminder," Step 2 of the disciplinary process, and placed Martin on a performance improvement plan through the end of October. He claimed that a supervisor told him the performance improvement plan was "pointless" because it dealt with tardiness issues rather than job performance issues. On or about October 15, 2015, Martin again asked to be moved to a part-time schedule. Block denied his request even though it had recruited new technical support employees by this time. On November 17, 2015, Martin arrived over six hours late for a shift, allegedly because he was unaware that his regular work hours had been changed. Block then escalated its disciplinary measures to Step 3 of its policy and issued Martin a "Written Warning."

{¶ 9} During the last week of December 2015, Martin requested personal leave to visit his sick step-grandmother. Block denied the request, telling Martin he would need a doctor's note to take personal leave. Martin claimed he could not obtain a doctor's note because his step-grandmother lived in Oklahoma. Martin also alleged that he had a sufficient personal leave balance to cover the requested time off.

{¶ 10} After this incident, Block requested that Martin meet with the human resources department. On January 5, 2016, Martin met with a Block human resources representative and a technical support supervisor. At that meeting, Block asked Martin to

4.

resign from the company. When he declined, Block terminated his employment effective January 6, 2016. Martin alleged that he was not paid for hours worked on December 29, 2015, and did not receive payment for his unused vacation time. Martin was also denied unemployment benefits because Block claimed to have terminated him with just cause.

{¶ 11} On April 15, 2016, Martin filed his initial complaint against Block, claiming that Block unlawfully discriminated against him in violation of R.C. 4112.02 and 4112.05, and violated his equal protection rights under 42 U.S.C. 1981 and his constitutional rights under 42 U.S.C. 1983. He alleged that he was aware of current Block employees who had requested "more accommodating" schedules and were not denied. He also alleged that Block's timekeeping records were inaccurate. Martin further claimed that Block used him as an example to exert psychological control over the rest of the technical support specialists. He blamed Block for loss of enjoyment of life, loss of personal and professional opportunities, and mental anguish. Martin claimed to have suffered damages by losing promotion opportunities, wages and earnings, and educational and professional advancement.

{¶ 12} On May 13, 2016, Block filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. It argued that the R.C. 4112.02 and 42 U.S.C. 1981 claims both failed because Martin did not allege that he is a member of a protected class or that Block's action were motivated by Martin's membership in a protected class; his R.C. 4112.05 claim failed because the statute relates to filing a case with the Ohio Civil Rights Commission, not a common pleas court; and his 42 U.S.C.

5.

1983 claim failed because he did not allege that Block was a state actor or acting under color of state law. On May 18, 2016, Martin filed a "Motion to Strike and Statement of Reasons for Opposing Defendant's [sic] Motion to Dismiss Pursuant to Civ. R [sic] 12(B)(6)." Block filed its reply on May 27, 2016.

{¶ 13} Martin then filed a motion for leave to file an amended complaint on June 13, 2016, which was 31 days after Block filed its Civ.R. 12(B)(6) motion. He did not file the proposed amended complaint with his motion, but he submitted a copy of the unfiled pleading to the courtroom. Martin removed the federal law claims and the claim under R.C. 4112.05 from the proposed amended complaint, but retained his claim under R.C. 4112.02. The proposed amended complaint also contained the following additional factual allegations: Martin is a white male; Block allowed another technical support specialist—an "Arabic male"—to remain on a part-time schedule at an unspecified time during Block's restructuring; and Block informed Martin at the beginning of his performance improvement plan in October 2015 that he would be terminated if he was late for work again. The proposed amended complaint also alleged that the performance improvement plan was retaliatory and discriminatory because it "further complicated [his] position." Finally, Martin amended his damages to include loss of credit, loss of education, back pay, front pay, emotional stress, loss of enjoyment of life, suffering, and humiliation.

{¶ 14} On July 14, 2016, while the motion for leave to amend was pending, Martin filed a second memorandum in opposition to Block's Civ.R. 12(B)(6) motion to

6.

dismiss. In it he argued that Block's motion should be denied because the proposed amended complaint replaced the original complaint and met the requirements for pleading an unlawful discriminatory acts claim. Block filed another brief in support of its motion on July 20, 2016.

{¶ 15} On August 17, 2016, the trial court filed an order related to Martin's motion for leave to amend. It stated that "the attached copy of [Martin's] proposed Amended Complaint shall be filed with the Motion for Leave to File an Amended Complaint as an exhibit, deemed submitted as of June 13, 2016, and held until ruling on [Martin's] Motion for Leave to File an Amended Complaint." Martin, however, never filed the proposed amended complaint or otherwise placed it in the record.

{¶ 16} The trial court issued its opinion and judgment entry on September 13, 2016. It found that Martin failed to amend his complaint within 28 days after Block filed its Civ.R. 12(B)(6) motion to dismiss and, therefore, Martin could not amend his complaint without leave of court under Civ.R. 15(A). The court then denied leave to amend after finding that the proposed amended complaint would not cure the pleading deficiencies of the original complaint. With leave to amend denied, the only pleading before the trial court was the original complaint that was the subject of Block's Civ.R. 12(B)(6) motion to dismiss. The court granted Block's motion to dismiss, finding that Martin failed to allege facts supporting each element of his discrimination claims. Martin now appeals, setting forth two assignments of error:

7.

FIRST ASSIGNMENT OF ERROR:

The trial court committed prejudicial error by denying Appellants' [sic] motion for leave to file first amended complaint based upon its opinion that the amended complaint lacked sufficient operative facts to support an unlawful discriminatory practice claim and that the filing were [sic] untimely and futile.

SECOND ASSIGNMENT OF ERROR:

The trial court committed prejudicial error by granting Defendant's [sic] motion to dismiss based upon its opinion that Plaintiff's amended complaint did not address the deficiencies contested in the original complaint.

## II. Law and Analysis

### A. Leave to Amend the Complaint

{¶ 17} Martin first argues that the trial court erred in finding that he was not entitled to amend his complaint as a matter of course and in denying his motion for leave to amend on the basis that the amendment was futile. Block contends that Martin filed his motion for leave to amend out of time and, therefore, the trial court correctly found Martin was not entitled to amend his complaint as a matter of course. Block also argues that the trial court correctly denied Martin's motion for leave to amend because the amendment was futile. We address each of these arguments in turn.

8.

### 1. Amendment as a Matter of Course

{¶ 18} Under Civ.R. 15(A), a party may amend a pleading to which a responsive pleading is required once as a matter of course within 28 days after service of the responsive pleading or 28 days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. This right is absolute. *Taylor v. Academy Iron & Metal Co.*, 36 Ohio St.3d 149, 156, 522 N.E.2d 464 (1988) (decided under former analogous section); and *see Schisler v. Columbus Med. Equip.*, 10th Dist. Franklin No. 15AP-551, 2016-Ohio-3302, ¶ 23; *see also Han v. Univ. of Dayton*, 2d Dist. Montgomery No. 26343, 2015-Ohio-346, 28 N.E.3d 547, ¶ 58. Any other amendments require the consent of the opposing party or leave of court. Civ.R. 15(A). "The court shall freely give leave when justice so requires." *Id.*

{¶ 19} Martin argues that he had a right to amend his complaint because Block had not yet filed an answer. This was true under a prior version of Civ.R. 15(A) (Former Civ.R. 15(A) stated, "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * *."). But this rule was amended in 2013 to allow a party to amend its pleading without leave of court only until the earlier of 28 days after service of a responsive pleading or 28 days after service of a Civ.R. 12 motion. 2013 Staff Note, Civ.R. 15. A party has an absolute right to amend his pleading during the applicable 28-day period by filing an amended pleading.

{¶ 20} In addition, under Civ.R. 6(D), "[w]henever a party has the right or is required to take some act * * * within a prescribed period after the service of a notice or

9.

other document upon that party and the notice or paper is served upon that party by mail * * * three days shall be added to the prescribed period." Thus, when a party is served with a Civ.R. 12 motion by mail, that party has three days beyond Civ.R. 15(A)'s prescribed 28 days—for a total of 31 days—within which to amend a pleading without leave of court.

**{¶ 21}** Block served its Civ.R. 12(B)(6) motion to dismiss by mail on May 13, 2016. Martin therefore had a right to amend his complaint by June 13, 2016—which was 28 days after service (Civ.R. 15(A)) plus an additional three days because Block served its Civ.R.12 motion by mail (Civ.R. 6(D)). Although Martin filed a "Motion for Leave to File an Amended Complaint" on June 13, 2016, he did not file the amended complaint on that date. Indeed, as the trial court recognized in its opinion and judgment entry, Martin never filed the amended complaint or otherwise placed a copy of the pleading in the record. Because Martin did not file his amended complaint on June 13, 2016, he did not amend his pleading within the prescribed period for amendments "as a matter of course."[1]

**{¶ 22}** The trial court therefore did not err in finding that leave of court was required for Martin to amend his complaint.

---

[1] We note that Martin, as a pro se litigant, is bound by the same rules and procedures as parties who are represented by counsel. *Kenwood Gardens Assn., LLC v. Shorter*, 6th Dist. Lucas No. L-10-1315, 2011-Ohio-4135, ¶ 8. Though the court may afford a pro se litigant some leeway by liberally construing his pleadings, Martin does not have any greater rights than a represented party and must bear the consequences of his mistakes. *HSBC Bank United States NA v. Beins*, 6th Dist. Lucas No. L-13-1067, 2014-Ohio-56, ¶ 7.

10.

## 2. Amendment by Leave of Court

{¶ 23} Martin next argues that the trial court erred in denying his motion for leave to amend because, contrary to the court's finding, his proposed amended complaint corrected the pleading deficiencies of the original complaint. Martin argues that the proposed amended complaint alleges a prima facie case for employment discrimination under R.C. 4112.02 and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973), a case from the Supreme Court of the United States that lays out a four-part test for proving an indirect case of employment discrimination. In response, Block argues that the trial court properly exercised its discretion in denying the motion for leave to amend because the proposed amended complaint fails to satisfy the *McDonnell Douglas* elements, as modified for a claim of reverse racial discrimination, and also lacks operative facts to support an inference of discriminatory intent as required by R.C. 4112.02(A).

{¶ 24} Martin's proposed amended complaint alleges a single claim against Block for unlawful discrimination under R.C. 4112.02(A) and 4112.99. Under R.C. 4112.02(A), it is an "unlawful discriminatory practice" for an employer

> because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

11.

A party alleging an "unlawful discriminatory practice" under R.C. 4112.02 may seek damages, injunctive relief, and any other appropriate relief through a civil action under R.C. 4112.99.

{¶ 25} Ohio courts hold that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to state-law discrimination claims under R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981), citing *Republic Steel v. Ohio Civ. Rights Comm.*, 44 Ohio St.2d 178, 339 N.E.2d 658 (1975) and *Weiner v. Cuyahoga Community College Dist.*, 19 Ohio St.2d 35, 249 N.E.2d 907 (1969). Under Title VII, an employee must demonstrate that an adverse employment action was causally linked to discriminatory intent. The ultimate inquiry is "whether the defendant intentionally discriminated against the plaintiff." *USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

{¶ 26} In rare cases, an employee may establish discriminatory intent through direct evidence that "the employer more likely than not was motivated by discriminatory intent." *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 587, 664 N.E.2d 1272 (1996). Direct evidence is found, for instance, where an employer's policy is discriminatory on its face or where a statement by an employer directly shows there is a discriminatory motive. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) ("Such [direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you

12.

because you are disabled.'"); *Schlett v. Avco Fin. Servs., Inc.*, 950 F.Supp. 823, 828 (N.D.Ohio 1996).

{¶ 27} Absent direct evidence of discriminatory intent, an employee alleging a violation of R.C. 4112.02 has the burden to establish a prima facie case of discrimination under a four-part test that was first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d. 668. *Plumbers & Steamfitters* at 197 ("*McDonnell* established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees"). Pursuant to the *McDonnell Douglas* test, as adopted in Ohio, a prima facie case of discrimination under R.C. 4112.02 requires allegations that (1) the plaintiff is a member of a statutorily-protected class; (2) the plaintiff was discharged or otherwise suffered an adverse employment action; (3) the plaintiff was qualified for the position; and (4) the plaintiff was replaced by, or his removal permitted the retention of, a person outside the protected class. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 9; *Brogan v. Family Video Movie Club, Inc.*, 6th Dist. Lucas No. L-13-1283, 2015-Ohio-70, ¶ 16.

{¶ 28} While these are the *general* requirements of a discrimination claim, Ohio courts apply a modified version of the *McDonnell Douglas* test in cases of "reverse discrimination"—i.e., where a member of a dominant group claims discrimination based on race or sex. In such cases, the first and fourth prongs are altered; the plaintiff must make a prima facie showing that (1) background circumstances support the inference that plaintiff's employer was the unusual employer who discriminated against non-minority

13.

employees, (2) the plaintiff was discharged or otherwise suffered an adverse employment action, (3) the plaintiff was qualified for the position, and (4) the plaintiff was treated disparately from similarly-situated minority employees. *See, e.g.*, *Pohmer v. JPMorgan Chase Bank N.A.*, 10th Dist. Franklin No. 14AP-429, 2015-Ohio-1229, ¶ 32; *Horsley v. Burton*, 4th Dist. Scioto No. 10CA3356, 2010-Ohio-6315, ¶ 75; *Mitchell v. Lemmie*, 2d Dist. Montgomery No. 21511, 2007-Ohio-5757, ¶ 122.

{¶ 29} The *McDonnell Douglas* test, however, is an evidentiary—rather than a pleading—standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Coryell* at ¶ 25 (expressly adopting *Swierkiewicz*). This is because discovery may unearth direct evidence of discriminatory intent, thereby making the *McDonnell Douglas* test—which is applicable only in the absence of such direct evidence—wholly irrelevant to the case. "It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits * * *." *Swierkiewicz* at 511-512. The plaintiff, therefore, does not need to plead facts sufficient to establish each of the *McDonnell Douglas* elements to survive a Civ.R. 12(B)(6) motion to dismiss; the plaintiff need only plead "a short and plain statement of the claim" under Civ.R. 8(A). To constitute fair notice under Ohio's liberal pleading rules, "the complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions." *Gonzalez v. Posner*, 6th Dist. Fulton No. F-09-017, 2010-Ohio-2117, ¶ 11.

14.

{¶ 30} The matter before the trial court was not a Civ.R. 12(B)(6) motion to dismiss the amended complaint but, rather, a motion for leave to amend under Civ.R. 15(A). While leave to amend should be freely given "when justice so requires," whether to grant leave to amend the pleadings lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Delta Fuels, Inc. v. Consol. Environmental Servs.*, 6th Dist. Lucas No. L-11-1054, 2012-Ohio-2227, 969 N.E.2d 800, ¶ 45. Abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). "Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington Steel*, 60 Ohio St.3d 120, 573 N.E.2d 622, at syllabus.

{¶ 31} The issue on appeal is therefore whether Martin made a prima facie showing of support for the new matters sought to be pleaded—i.e., a single claim for employment discrimination under R.C. 4112.02(A). This "prima facie showing" does not refer to the *McDonnell Douglas* elements of a circumstantial case of employment discrimination; it refers to whether the proposed amended complaint contains "sufficient underlying facts that relate to and support the alleged claim." *Gonzalez* at ¶ 11.

{¶ 32} In Ohio, a plaintiff asserting a claim for employment discrimination must allege facts that, if true, would establish that the employer somehow "discriminate[d] against" the plaintiff by discharging him without just cause, refusing to hire him, or

taking some other adverse employment action, and that the employer did so "*because of* race, color, religion, sex, military status, national origin, disability, age, or ancestry." (Emphasis added). R.C. 4112.02(A). In other words, a complaint must contain factual allegations supporting two critical elements—adverse employment action and discriminatory intent—to state a claim under R.C. 4112.02(A). Where a plaintiff claims racial discrimination, the complaint must contain operative facts to support the conclusion that the employer took the adverse employment actions because of the plaintiff's race. *Morrissette v. DFS Servs., LLC*, 10th Dist. Franklin No. 10AP-633, 2011-Ohio-2369, ¶ 26 (affirming trial court's dismissal of plaintiff's reverse race discrimination claims because "[w]ithout operative facts to support the statement that defendants considered his race in deciding to fire him, the statement amounts to an unsupported conclusion and is insufficient to withstand a motion to dismiss").

{¶ 33} Here, the proposed amended complaint alleges that Martin is a white male and suffered several adverse employment actions: Block refused to honor Martin's requests to move from a full-time schedule to a part-time schedule, Block refused to allow Martin to use personal time to visit his sick step-grandmother without a doctor's note, Block disciplined Martin for repeated tardiness and attendance issues, and Block terminated Martin's employment.

{¶ 34} The proposed amended complaint does not, however, contain any operative facts to suggest that Block unlawfully considered Martin's race when it refused his scheduling requests, disciplined him, or terminated him. Although Martin alleges that an

16.

Arab co-worker was "allowed to maintain part-time status" through Block's restructuring, Martin does not allege that he made a similar request that was denied. Indeed, Martin does not claim that he ever asked to maintain his part-time status when the restructuring began. Martin alleges that he made two requests to be moved from a full-time to part-time schedule and one request to use personal leave to visit a sick relative, which were all denied. Notably, all of Martin's requests for scheduling adjustments occurred after Block began disciplinary action against him for ongoing tardiness and attendance issues. Martin does not claim that Block approved any similar scheduling requests by any minority employees under similar employment conditions.

{¶ 35} Also, while Martin alleges that he was disciplined according to Block's written policies, he does not claim that any minority employees were disciplined less often or less harshly or that Block ignored its written policy when disciplining minority employees. *Compare Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 7 (reversing Civ.R. 12(B)(6) dismissal of claim for race discrimination under R.C. 4112.02(A) where the plaintiff alleged that his employer "improperly terminated [him] for medical absences in excess of company policy, while allowing white employees to take non-penalized leave under the same conditions"). The proposed amended complaint simply does not contain any operative facts to support an inference that Block's actions were motivated by discriminatory intent.

17.

{¶ 36} Given that Martin failed to make a prima facie showing of support for his employment-discrimination claim, the trial court did not abuse its discretion by denying leave to amend. Martin's first assignment of error is not well-taken.

### B. Civ.R. 12(B)(6) Motion to Dismiss

{¶ 37} In Martin's second assignment of error he contends that the trial court erred by granting Block's Civ.R. 12(B)(6) motion to dismiss his original complaint. But Martin does not argue that the Civ.R. 12(B)(6) ruling was incorrect on its merits. He argues that Block's motion to dismiss was rendered moot by his amended complaint, which he claims was "neither futile nor untimely" and "address[ed] the deficiencies contested in the original complaint."

{¶ 38} But, as already discussed, Martin failed to file the amended complaint within the time allowed for amendment as a matter of course, and Martin's motion for leave to amend was properly denied by the trial court because the amended complaint failed to state a claim for discrimination pursuant to R.C. 4112.02(A). The only pleading before the trial court was Martin's original complaint, which was the subject of Block's Civ.R. 12(B)(6) motion to dismiss. Thus, the trial court did not err by considering, and ultimately granting, Block's motion to dismiss the original complaint.

{¶ 39} For these reasons, we find Martin's second assignment of error not well-taken.

18.

### III.  Conclusion

**{¶ 40}** The September 13, 2016 judgment of the Lucas County Court of Common Pleas is affirmed.  Martin is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                             _____

JUDGE

Thomas J. Osowik, J.

_____

Christine E. Mayle, J.

JUDGE

CONCUR.

_____

JUDGE